Irving COSBY, et al., Plaintiffs,

v.

Sally JACKSON, Director of the Illinois Department of Employment Security, et al., Defendants.

No. 83 C 3116.

United States District Court, N.D. Illinois.

Aug. 16, 1990.

Jeffrey B. Gilbert, Steven Coursey, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Nancy K. Needles, Asst. U.S. Atty., Jerome J. Webb, Koutsky, Boudreau, Lassen & Mason, Chicago, Ill., for defendants.

OPINION

EASTERBROOK, Circuit Judge.[*]

Earlier proceedings, see 625 F.Supp. 619 (N.D.Ill.1985), affirmed in part and reversed in part, 843 F.2d 967 (7th Cir.1988), left this case in potential need of a second trial to determine whether the state's procedures for adjudicating claims for extended unemployment benefits complied with the due process clause of the fourteenth amendment. The parties decided that settlement would be preferable to extended combat, and they negotiated a consent decree concluding most of the case.

This decree provides that the Illinois Department of Income Security shall give applicants for benefits concrete notice of the extent to which they must search for work. Requirements tailored to individual circumstances are possible, but the decree includes a notice, suitable for all comers, that suffices. It tells applicants that they must do something every day to find work, that they must be prepared to accept the minimum wage (or their own levels of supplemental unemployment benefits), and that they must be willing to travel 90 minutes each way to and from work. The decree also provides forms the Department will send to claimants informing them of the issues (but not the evidence) to be raised during interviews with claims adjudicators or hearings before referees. Finally, the decree affords its benefits to all persons whose adjudications are not yet final. I approved this decree, after a hearing under Fed.R.Civ.P. 23(e), because it resolves the principal issues presented by the case yet preserves the Department's freedom to change policy, so long as it continues to provide the constitutionally necessary notice. See *Bates v. Johnson,* 901 F.2d 1424 (7th Cir.1990).

What the parties could not resolve is whether retroactive relief is possible. This question has two stages: first, whether the state violated the Constitution at all (a question that could be resolved only after a second trial); second, whether, if so, the eleventh amendment allows the court to afford relief to persons whose unemployment claims were resolved and closed before the date of its decision. Because *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), gives the general answer "No" to this second question, the parties have concentrated their attention on whether the nature of unemployment compensation creates an exception to *Edelman.*

Plaintiffs submit that it does, because the money to pay for unemployment benefits (and hence any retroactive relief) does not come from the state's general revenues. Illinois maintains a segregated fund that is financed by "contributions" (read, taxes) from employers, Ill.Rev.Stat. ch. 48 ¶¶ 550–581. Illinois pays all regular, extended, and supplemental unemployment benefits from this fund. The United States reimburses Illinois for half of the cost of the extended benefits and all of the cost of the supplemental benefits. Most of the money thus derives from the federal rather than the state treasury; even the portion nominally paid by Illinois "really" comes from employers rather than the people at large. Because the general revenues of the state are not threatened, plaintiffs conclude, the eleventh amendment does not apply. One court of appeals has embraced this line of argument. *Brown v. Porcher,* 660 F.2d 1001, 1006–07 (4th Cir.1981), cert. denied, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983) (over the dissent of three Justices).

Illinois replies that the source of the funds is irrelevant. The eleventh amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." The "Judicial power"—that is, federal jurisdiction—does not embrace a suit "commenced or prosecuted against one of the United States". Where the state gets the money to pay a judgment, indeed whether the suit asks for money, is irrelevant to this rule. A court's first and only

---

[*] Of the Seventh Circuit, sitting by designation.

question is whether the defendant is "one of the United States". If the answer is yes, then the suit is forbidden. Because a state official sued in an official capacity (which describes all of the defendants to this suit) is treated as a "state", *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985), the suit fails at the threshold. How Illinois would satisfy the judgment—in particular, that Illinois gets money from employers and the federal government—is irrelevant. One court of appeals has rejected *Brown* and held that the source of payments for retroactive unemployment compensation does not affect the scope of immunity the eleventh amendment affords. *Esparza v. Valdez*, 862 F.2d 788, 794–95 (10th Cir.1988), cert. denied, —— U.S. ——, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989). I agree with *Esparza* and disagree with *Brown*.

Start with the text of the Constitution. Because this is a suit "commenced or prosecuted against one of the United States", the eleventh amendment applies.* Even prospective relief cannot be had against "one of the United States". *Cory v. White*, 457 U.S. 85, 90–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Adams v. Indiana*, 795 F.2d 27 (7th Cir.1986). So if this is a suit against Illinois, the court cannot grant the plaintiffs' request.

There is of course a long tradition of awarding injunctive relief that effectively governs states, but this depends on *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which holds that state officials who violate the Constitution aren't "really" acting for the state at all. The relief runs against *them*, not against "the state". Because the decree does not bind "one of the United States", it does not encounter the eleventh amendment. *Edel-*

*man* holds that *Young* does not authorize damages relief. A court cannot pretend that the state actors before it are acting as private parties when the relief comes out of the state's pockets. Even fictions have their limits; retroactive relief presses the *Young* fiction past the breaking point.

What I need to decide, then, is whether the plaintiffs want relief from "one of the United States". To that the answer must be "Yes". They have sued state officials in their official capacities only, see *Graham*. Retroactive relief would bind the state in its role as a sovereign. That Illinois could recoup the outlay from someone else does not diminish the quality of the judgment as one against the state. If a retailer that sells a defective toaster impleads the manufacturer in response to an action on the warranty, the judgment binds the retailer even though the manufacturer's pockets ultimately will be tapped for payment. Closer to the mark stands the principle that a state's willingness to indemnify its employees for liability under 42 U.S.C. § 1983 does not mean that the litigation is against "the state". *Duckworth v. Franzen*, 780 F.2d 645, 650–51 (7th Cir.1985). A plaintiff may look only to the defendant for satisfaction of the judgment; where the employee gets the money is no concern of the plaintiff or court. So too with suits against the state. Where Illinois gets the money to satisfy a judgment is no concern of the plaintiff or the court; what matters is that the judgment runs against the state.

I recognize that many decisions, including at least one from the Seventh Circuit, closely examine the source of funds to pay a judgment. *Miller–Davis Co. v. Illinois State Toll Highway Authority*, 567 F.2d 323, 327–30 (7th Cir.1977). They do this, however, not because the eleventh amendment permits suits against "one of the

---

* Putting to one side the question whether the eleventh amendment (as opposed to general notions of sovereign immunity) applies at all to federal-question or constitutional litigation. The text speaks only of cases under the diversity and alienage jurisdictions. Because prevailing doctrine treats the principles of sovereign immunity applicable to federal-question cases (including constitutional cases) identically to those under the eleventh amendment, I treat this case as if the eleventh amendment governs directly. But see *Pennsylvania v. Union Gas Co.*, —— U.S. ——, 109 S.Ct. 2273, 2286–89, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring), arguing that the "actual" eleventh amendment is stronger than the background principles of sovereign immunity that apply in the absence of a statute.

United States" when the state has a segregated fund, but because it is often unclear whether the defendant *is* "one of the United States". Special-purpose districts and agencies have proliferated; these may have many of the aspects of private corporations, with some of the aspects of a state. What are we to make of a university system with some public trustees, some private trustees, an endowment, tuition income, and an appropriation from the state treasury? Questions such as this send courts scurrying to examine the details of the defendant's structure and finances. To determine whether the defendant is "the state", courts look at who appoints and controls the entity, who pays judgments against it, and so on. That was the point in *Miller–Davis,* ending in the conclusion that an entity outside the direct chain of control in the executive branch of Illinois and without access to its Treasury was not "the state" after all. No one doubts, however, that the Illinois Department of Employment Security is part of Illinois. It is a line agency of the executive branch, answerable to the Governor.

Knowing that the Illinois Department of Employment Security is "one of the United States" brings the case to a close. That Illinois funds the Department's operations by taxing employers does not make it less a state operation. Most state revenues come from taxes, and the identity of the taxed group cannot matter. Neither does it matter that the federal government offers reimbursement. Money flows in because the federal government gives money *to states* for particular programs. Segregation of the monies also cannot matter. Everything the plaintiffs say about unemployment compensation could be said about the Social Security program, with a special tax base and segregated receipts. Yet the Supreme Court regularly applies principles of sovereign immunity to suits in which judgments would be satisfied out of the Social Security Trust Fund. E.g., *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), in which all Justices assumed that sovereign immunity would forbid even prospective relief affecting the Trust Fund in the absence of a statute waiving that immunity. Just so, the source of the money to pay unemployment benefits does not make the suit less one against the State of Illinois. *Edelman* itself involved state funds that were replenished by the federal government. See also *Kennecott Copper Corp. v. State Tax Commission,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944).

Because retroactive relief would run against a state, the eleventh amendment forbids the court to award a remedy—including "notice relief", *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Watkins v. Blinzinger,* 789 F.2d 474, 483–84 (7th Cir.1986). It is consequently unnecessary to decide whether Illinois violated the Constitution; relief beyond that approved in the consent decree would be impossible even if it did. The court will accordingly enter a final judgment approving the consent decree and otherwise dismissing the complaint on the basis of the eleventh amendment.